## VALIDITY OF CONTRACTS FOR EXCLUSIVE EXCHANGE OF BUSINESS BETWEEN TELEPHONE COMPANIES.

Common Pleas Court of Van Wert County.

THE UNITED STATES TELEPHONE COMPANY v. THE MIDDLEPOINT HOME TELEPHONE COMPANY.

Decided, October, 1908.

*Telephones—Contracts for Exclusive Exchange of Toll Business—Not In Restraint of Trade—Combinations of Telephone Companies Distinguished from Combinations of Gas and Street Railway Companies—Evidence as to Circumstances Surrounding Making of Contract Admissible—Monopoly—Mutuality—Injunction—Sections 3455, 3470 and 3471.*

1. In an action to determine the validity of a contract between two telephone companies, evidence of the condition of the telephone business within the field in which the companies were operating is admissible for the purpose of showing the tendency and effect of the agreement which was made.

2. Where the prayer of the petition in such a case is for an injunction restraining the defendant from violating the contract by routing its business over lines belonging to a third company, instead of sending it over the lines of the plaintiff, the action is not open to the objection that it is an attempt to enforce a contract by mandatory injunction and will lie.

3. Inasmuch as combinations of telephone exchanges and telephone lines are necessary in order to afford proper facilities for the public, and the Legislature has recognized this necessity by provision for mergers and combinations of such companies, a contract between two telephone companies which provides for an exclusive interchange of business must be distinguished from contracts effecting mergers of gas or street railway companies, and is not void because of a tendency to create a monopoly or subversive of the public interest and benefit; and where a system of lines has been built up on the faith of such an interchange of business, the claim on the part of the defendant company that the contract is in restraint of trade and should be abrogated is not well founded.

*G. M. Saltzgaber* and *Cable & Parmenter,* for plaintiff.

*J. F. Lindemann, Dailey & Allen, W. B. Mann* and *D. K. Tone,* contra.

MATTHIAS, J.

The questions presented in this case upon a motion to dissolve the injunction heretofore granted, upon the application of the plaintiff, are almost entirely questions of law. Although more than two days were consumed in taking evidence there are but few questions of fact to be considered.

The plaintiff seeks to have the defendant enjoined from a continued and continual violation of the terms of its contract with the defendant, by reason of which violation toll business which, under the terms of said contract should be transmitted over the lines of the plaintiff, has been diverted and will continue to be diverted, by the defendant, to the lines of the Bell system, so-called. The defendant contends that the plaintiff is not entitled to the remedy it seeks because the contract upon which it relies is contrary to public policy and void, for the reason that it tends to create a monopoly, and also prohibits the defendant company from discharging the obligation which it owes to the public, and for the further reason that said contract lacks mutuality and is oppressive and unjust.

A preliminary question arose during the hearing of the case and presents itself at this time—whether evidence of the conditions relative to the telephone business in Middlepoint and vicinity, about and before the time said contract was made, could be received and considered by the court in determining the validity of the contract, on the theory that it shows the real tendency and effect thereof? The court permitted such evidence to be introduced, and we are still of the opinion that it should be considered for the purpose stated.

The United States Telephone Company was organized in 1898, and incorporated under the laws of this state, the powers thereby granted being those of "constructing, purchasing, acquiring, owning and operating toll lines for the transmission of telephonic communications from and to various cities, towns, villages and points within and beyond the state of Ohio, and to connect said toll lines with telephone exchanges and telephone devices in said several places."

At that time and for sometime thereafter numerous telephone exchanges, being so-called independent exchanges, were

.in operation throughout Ohio and, as the evidence shows, especially in northwestern Ohio, said exchanges then and for sometime thereafter were isolated, there being no connection between them by means of toll or long distance lines or otherwise. Long distance lines were then and long theretofore had been in operation by the Central Union Telephone Company, and other companies allied therewith, together known as the Bell system. It was impossible however for such independent exchanges to procure service over said Bell lines, and it was to meet such emergency and to supply the demand arising from such conditions that the United States Company was organized. Said United States Company thereupon entered into a contract with said independent exchanges, and undertook to construct toll lines connecting such exchanges and affording their subscribers long distance service which theretofore had been denied them. Such lines, together with the exchanges connected thereby, became known as the Independent system and it appears that, until the happening of the things herein complained of by the plaintiff, said systems—Bell and Independent—had been maintained separate and distinct from each other; and they have been and are competitors for long distance business.

Since its organization the plaintiff has entered into contract, similar to that in question, with nearly 300 independent companies operating exchanges, and claims that its investment of large sums of money in constructing, extending and maintaining its lines to meet the demands of the public has been made because of, and upon the faith of, said contracts, including the one in question here.

The defendant is the successor of the Middlepoint Southern Telephone Company, with which in 1902 the plaintiff entered into a contract similar in its terms to that involved herein, and two years later when said Middlepoint exchange was taken over by the defendant a new contract was made. Copies of said contracts are attached to the petition.

The terms of said contract are such that the parties thereto agreed upon a complete interchange of business between them upon the basis of compensation therein stated, and the defendant thereby became a part of the system comprised of the in-

dependent exchanges of Ohio and adjoining states, linked together by the toll lines of the plaintiff.

The value of such agreement to the parties as well as all exchanges connected with said system, and hence to the subscribers (which the evidence shows constituted a great portion of the public), depended upon the permanency of the plan of operation, and that was attempted to be secured by one of the provisions of the contract. It was agreed that neither company should enter into any contract with any other person, firm or corporation "whereby the rights, privileges or advantages herein acquired by either party, may be impaired," and it was further agreed that such contract should remain in force for and during the period of 99 years. The contract of 1902 contained a further provision which was not incorporated in the later contract, whereby the Middlepoint company agreed to withdraw its lines from the village of Wetsel and also Delphos, and further agreed not to establish any toll station or stations where the plaintiff then had or should thereafter establish a toll station, or to build to or connect with any other telephone company for the exchange of toll business.

Defendant now complains of the exclusive provisions of said contract and of the period of its duration, and insists that it can not be enforced by mandatory injunction. We do not agree with the view taken by counsel for the defendant that the action brought by plaintiff is one for the specific enforcement of a contract. Plaintiff does not ask nor seek a mandatory injunction. It only prays that the defendant be restrained from committing the breach specified, the particular violation which consists in carrying out a contract with the Central Union Company to transmit messages over its lines which it has agreed to send over the lines of the plaintiff. On the other hand the defendant is not here seeking a recission of its contract with the plaintiff, but on the contrary it quite apparently desires to retain all the benefits, privileges and advantages secured to it by that contract.

Plaintiff and defendant co-operated harmoniously in pursuance of and in compliance with the terms of said contract,

until December 23d, 1907, when the defendant, agreeably to the provisions of a contract theretofore made with the Central Union Telephone Company, connected the lines of the latter company with its switch-board and undertook to act as toll agent for the said Central Union Company, transmitting messages over the lines of said company and receiving all messages from the lines thereof which were destined to Middlepoint. On February 22d, 1908, the temporary injunction, now sought to be dissolved, was granted, restraining the defendant from maintaining such connection with the Central Union lines.

Is the contract between the plaintiff and defendant void because it is contrary to public policy and prejudicial to the public welfare? Whether the contract is one which tends to create a monopoly and for such reason is void, we find depends much upon the facts. An agreement may be void because of its tendency to create monopoly, when applied to certain classes of business, and be quite the contrary when applied to the telephone enterprise. Some combination of telephone exchanges and of telephone lines is absolutely necessary to a proper enjoyment thereof by the public. The development of the Independent system which we have heretofore noticed is an illustration of that fact. The Legislature of Ohio recognized the necessity for such a merger and combinations when it enacted Sections 3455. 3470 and 3471 of the Revised Statutes of Ohio, and the sort of merger effected by the contract in question seems to have been contemplated by the law making power of the state.

The Middlepoint Company was organized for a purpose quite different from that of the plaintiff. The defendant was organized for the purpose of acquiring, constructing, owning and operating a telephone exchange in the village of Middlepoint, Ohio, and to supply telephone service to the people of Middlepoint and vicinity. The plaintiff and defendant were not competitors; the nature of their business made them natural and necessary co-operators—the one providing local service to its subscribers, while the other provided toll and long distance service for said exchange, which otherwise would have been isolated, and thus brought all the subscribers into communica-

tion with the subscribers of all other independent exchanges. The merger or combination, if such it may be termed, was natural, for it was a matter of necessity to both companies, and of unquestioned benefit to the public. When the defendant by said contract procured the benefits and advantages of toll service for its subscribers, it went further than it was required to go to discharge its full duty under the terms of its charter. There was no legal obligation resting upon the defendant to do more than conduct a local exchange. It is also clear that the defendant could not be compelled to make such connections with the plaintiff or with any other company, nor could the defendant require any toll company to connect with its switch-board and furnish its subscribers long distance service. The defendant was not required to transmit messages beyond its own lines, but it may do so and by such lines as it chooses, and when an exclusive contract is made with such company it can not be correctly stated that such contract is in the restraint of trade. The evidence is convincing that such contracts have not stifled competition, nor is that their tendency. On the contrary they have created competition, as is shown by the mere presence of this case in court.

The parallel which is attempted to be drawn with the line of cases dealing with the combination of gas and street railway companies is not justified and the rule governing such contracts we regard as inapplicable. A large number of such cases have been cited. We shall not take time to discuss them severally and point out the distinction in each. It is sufficient to say that in such cases it clearly appears that the contracts involved were contrary to public policy because of the restraint of trade; while in case at bar the benefit of such agreement to the public is apparent. The objection to the contract in question most insistently urged by counsel for the defense is, that the toll connection with the Bell system which the plaintiff seeks to enjoin is a service "which the public demands within the county of Van Wert required." This is not shown by the evidence. The best evidence upon this point is the business done with the Bell company during the two months such connection

was maintained. It appears that during such period practically all the business routed over the Bell line was to and from points reached by plaintiff's lines, the service over which had been reasonably satisfactory. Such service was therefore not required to meet the demands of the public, for the public unquestionably theretofore had the benefit of the same service, and the additional benefits conferred by the dual connection were chiefly upon the Central Union Company.

A line of cases has been cited and quotations freely made therefrom by counsel, which hold that a contract for the exclusive right-of-way over land can not be enforced. Such is the unquestioned rule, but it is not applicable to the issue presented in this case. No man can by contract or otherwise free his land from the liability of eminent domain, but that does not argue that a telephone company can not refuse to enter into a contract with another company to solicit and transmit over its line long distance messages, nor does it argue that it can not enter into a binding contract to send all messages from its exchange to points beyond its own line over the line of another company.

But it is argued that the defendant should be permitted to furnish service for its patrons to points not now reached by the lines of the plaintiff. We think it should be made possible so to do. But it has been shown by the evidence and demonstrated by counsel for the defendants in argument that such limited operation is impossible. Counsel have skillfully argued that the defendant under the terms of said contract is not forbidden to arrange with the Central Union Company for the transmission of messages to and from points not reached by the United States system; that such messages can not be transmitted without connecting the line of the Bell system with the defendant's switch-board; that when such connection is thus made with the switch-board of the defendant any restriction or limitation as to the business to be done with the Bell system would require the constant control and supervision of the court. Conclusion: therefore there can be no limitation or restriction whatever and the injunction must be dissolved.

The evidence shows a comparatively small demand by the patrons of the Middlepoint company for service other than that furnished by the Independent system; that the Central Union Company is able to and has heretofore provided service for those demanding it and that it now maintains a toll booth in Middlepoint. In order that the limited demand for such service may be met more conveniently by plaintiff's competitor, should the contract between the plaintiff and the defendant be avoided and the entire system known as the Independent system be thrown open to its competitor? This is what we are called upon to determine, for if such connection can be made and maintained with the Middlepoint exchange, it can be done throughout the field occupied by the Independent system. Should this be done in view of the facts presented?

The defendant as we have seen does not seek to avoid the contract in question, but apparently desires to retain all the benefits and advantages secured to it thereby. With the dual connection we have seen that but two or three of the points from or to which messages were transmitted over the Bell lines were not reached by the United States Company with reasonably satisfactory service. Then the defendant company, if such dual connection be maintained regardless of the contract with the plaintiff, is placed in the position of an agent serving two masters whose interests are necessarily antagonistic. It is as true today as when first spoken in the parable and has become a fundamental rule that, ''No servant can serve two masters; for either he will hate the one and love the other; or else he will hold to the one and despise the other.'' Corporations are controlled and managed by men, and what is true of individuals is true of corporations. There can be no question upon a consideration of the evidence before us but that, if the contract with the Central Union Company be performed, the end will be accomplished, whether or not that be the present purpose and aim of the defendant, of diverting from the plaintiff the business to which it is entitled under the terms of its contract, not only business originating at Middlepoint, but business originating at all points reached by the Bell sys-

tem and destined to Middlepoint.  Such business may be diverted by the operator without the knowledge of the subscriber or of the company.  The conclusion is justified by the evidence before us that the ultimate result would not be beneficial either to the Middlepoint company or the general public.

The contract in question is not void because of any tendency to create a monopoly.  The line of decisions relative to the combination of gas and street car companies, as heretofore stated, we have found inapplicable to the issues here presented.  But few cases have been passed upon by the court which called for any determination of the rights and liabilities of telephone companies to each other and to the public.  The Supreme Court of this state in the case of *State, ex rel,* v. *Telephone Company,* 36 O. S., 296, goes no further than to hold that a telephone company shall not discriminate in its service against any member of the general public who is willing and ready to comply with the conditions imposed upon all other patrons or customers who are in like circumstances.  This decision is not in the least inconsistent with the view that a telephone company, in the absence of specific legislation, can not require a competing company to connect its entire system with the switch-board of the other.  The import and effect of the decision of Judge Parker in *People, ex rel,* v. *Hudson River Telephone Company,* 19 Abbotts' New Cases, 479, is quite similar to that of our Supreme Court.

A railroad company to secure the necessary investments of capital in the discharge of the duty of furnishing sleeping car facilities to the public may secure to the sleeping car company freedom from competition, and the same principle applies to similar exclusive contracts with express companies and stock yard delivery companies.  See *United States* v. *Addyston Pipe & Steel Co.,* 85 Fed., 287, and cases there cited.

The contract in question is not subversive of the public interest and benefit and is not in restraint of trade.  The desire of persons to have use of other telephone lines would not justify the abrogation of this contract.  When it and other similar contracts were made a toll and long distance system connecting the many independent exchanges of this and adjoining states was

formed. Its formation would not have been justified otherwise, and it seems far from equitable at this time when this system has been built up and extended upon the faith of said contracts and in reliance thereon, and such investments have materially increased the value of the local exchanges and so widely benefited the public, bringing this modern convenience to almost every household, to absolutely disregard the obligations of said contracts and brush them aside upon the theory that they are in restraint of trade, because it now seems possible to secure access to the lines of a competing company which was denied until the last two years.

Defendant has not only urged that such contract is against public policy and in restraint of trade but contends also that it lacks mutuality and is oppressive and unjust. In support of the claim of want of mutuality, counsel seem to rely chiefly upon the clause of said contract which permits the plaintiff to fix the rates of toll service. The plaintiff does not determine the proportion of such rates which the defendant is to receive; that is fixed by the contract. We regard the contract as no stronger or weaker because of the clause referred to for the reason that the provision is implied that the rates must at all times be reasonable and, "the business is of such a public character that it is entirely subject to legislative regulation."

The motion of the defendant to dissolve the temporary injunction heretofore granted herein is overruled.